Mr. Justice MILLER
(stating the case) delivered the opinion of the court.
The conveyance of the legal title which is asked for by the bill filed in this suit is claimed on the ground of a contract, alleged to have been made in his lifetime by G. W. Lee; and the only question in the case is as to the truth of this allegation, -which is fully denied by the defendants in the court below, who are appellants here.
It is claimed bj7 complainants that the contract was made by letters: Lee proposing the terms in a letter written by *814 him from Kishwaukee, Illinois, which were accepted by a letter written by Kinney, at New York, where he resided. The letter, or rather the two letters, supposed to contain the offer of Lee are produced, and are admitted to be in his handwriting; but the letter of acceptance, if there was one, is not produced, nor any copy of it; and the fact that such a letter was ever written depends upon the testimony of Kinney and certain circumstances, supposed to corroborate his statement.
The counsel for the appellants denies that what-is written in this letter was intended as an offer which Lee expected the other party to act on definitely; but rather as a suggestion of wha.t he was willing to do if they could get'together. The opening expression of the letter- certainly does point strongly to a personal interview as essential in the writer’s view to a final arrangement. Still the terms offered are so definite, the property which he was to convey, and the consideration which he was to receive, namely, the note in which he had confessed judgment, were all so fully set forth, that we think if an unconditional acceptance in writing can be made out, it constitutes a contract, which should be specifically enforced in a court of chancery.
We have already stated that the proof of this acceptance rests mainly on the testimony of Kinney, who states that he is very confident that some six or "eight weeks after the letter of Lee was written — he thinks in the month of May — he wrote him a letter accepting, in behalf of himself and the Cogswells, the. offer of Lee, Avithout exacting the school-section lots in Chicago. He further states that he thinks he received a letter from Lee acknowledging the receipt of this letter of acceptance.
Let us look now, for a moment, at certain matters which are urged upon us, strongly confirming this statement of Kinney.
1. The fact which Ave have already mentioned, that a deed" for this lot was left, signed and acknowledged, with a blank ¿pace for the name of the grantee, by G. W.-Lee among his papers at his death, with another deed of the partnership *815 lots -which was fully executed and only needed delivery, is one of them.
It is to be remarked, however, as to the deed for the partnership lots, that Lee had previously conveyed the partnership property whenever requested by the other partners, and letters are in the record from them urging him to do this as to the canal lots. From his embarrassed condition, it was also his moral duty to. make this conveyance to save the property, to those who were entitled to it, from the grasp of his individual creditors.' This sufficiently explains the existence of that deed. But the fact that the deed for his own lot had no grantee in it, implies that his purpose with regard to it was not the same as with reference to the other.. He might have kept such a deed in readiness, if Kinney should come out West, as he had written he would, and should then be willing to accept his proposition and satisfy the judgment against him. Or he may have been expecting a favorable answer from Kinney, and wished to be ready if he'received it. At all events, conceding his willingness to make the contract, we do not think that any very strong presumption arises that his proposition had been accepted— which is the point to be established — from this paper in the form of a deed, but without a delivery, and with no directions left on either of these points.
2. A letter from Jonathan Cogswell to Lee, found among Lee’s papers, dated October 18th, 1842,* is much relied on as showing that the contract had been concluded.
The counsel for the appellees assumes that what is there written is written of the lot in controversy. But as we have already seen that the lots which were undoubtedly partnership property were to be conveyed for safety to some other member of the company by Lee, and as there are letters from them urging him to do this, all that Cogswell says in that letter is fully applicable to the partnership lots. At least, it might just as well have been written, and is as easily understood, if no thought had ever been entertained of conveying the lot which belongéd exclusively to Lee.
*816 3. Other letters of Kinney urging the conveyance and recording of deeds for real estate are produced, as showing the understanding that Lee was to convey this lot, but the answer is as in the case of the letter of Cogswell, that they do not mention this lot, and all that is said in them is fully explicable on the hypothesis that they refer exclusively to partnership lots.
We do not perceive, then, that these circumstances add much support to the testimony of Kinney. Of this, it is to be remarked, that it is delivered twenty years after the date of the supposed letter of acceptance, that he does, not pretend to be precise as to the date of it, within several weeks, and still less is he positive as to its language. He speaks, as we are satisfied, with candor, but with a want of certainty which is commendable, in reference to matters occurring so long ago of which he has no memorandum in writing. lie says that some little time after receiving Lee’s letters he had conversations, at different times, with Jonathan and Lois Cogs-well, in which they agreed to accept Lee’s offer, and he feels pretty sure he wrote to that effect to Lee. If we recall the fact, that Lee says he did not see how the matter could be arranged without a personal interview, and connect this with Kinney’s statement that he had promised Lee to come out to Illinois that summer on that business, we can see how easily Kinney, having agreed with the Cogswells as to the terms of settlement, and having resolved to go out to Illinois and close it up, may, in recalling the transaction after twenty years, have been so impressed with his conviction that it was all satisfactorily arranged before Lee’s death, as to feel confident that he had communicated to Lee the resolution, which had only been arrived at in the minds of himself and the Cogswells.
Many circumstances, not easily reconciled with the existence of such a letter, confirm this view of the matter. No such letter of acceptance was fouud among the papers of G-. W. Lee. The'force of this fact is rendered much stronger by the circumstance that among his papers several letters were found, from Kinney and Cogswell, bearing *817 dates between the date of his proposition and that of his death.
Kinney was a lawyer, and knew the necessity of preserving some evidence of his acceptance of the proposition, if it was one on which he ever expected to rely, yet he produces no copy of this letter of acceptance. Nor does he produce the letter from Lee acknowledging the receipt of that letter, although he found carefully filed away the letters in which Lee makes the proposition. These letters contain a full statement of the canal-lots transaction; thus showing that when importance was attached to letters they were preserved. Several other letters of Lee to Kinney are produced, but none recognizing the existence of this contract.
Kinney swears that the arrangements made when he went to Chicago, in June, 1848, and had a settlement with B. T. Lee, the administrator, were made with a view of carrying out the contract, which we are considering, and that B. T. Lee so understood it. B. T. Lee swears that he had never then heard of such a contract, and that no mention was made of it during his negotiation with Kinney. It is fortunate, in this conflict of recollections, that Kinney produces two memorandums of agreement made at the time, embracing the terms of settlements made by him with B. T. Lee, and signed by them; one having reference to his individual claim against Lee’s estate, and the other to the claim of himself and the Cogswells. These are full; and -a careful examination of them discloses nothing which, by the re-'motest implication, can be held to refer to an agreement made by Lee in his lifetime. Yet, as Kinney must, as a lawyer, have known that B. T. Lee was largely exceeding his powers as an administrator, nothing would have been more natural than a reference to a contract, which would have supplied this defect of power, if any such contract had been known to exist. Not only is there no allusion to a former agreement, but the one made at this time varies materially from the one set up in this suit; and this variance is to the prejudice of the parties interested in Lee s estate. The superior value of these writings as evidence, over the *818 recollections of Mr. Kinney, after twenty years from the time of the transaction, is apparent to every legal mind.
There is another piece of written testimony to which the same remark is applicable, and which we think is of itself almost conclusive that Kinney is mistaken in his recollection as to a ymtten acceptance of Lee’s proposition. It is the letter written by him to Lee, dated July 1st, 1842. [His Honor here quoted the letter on p. 813, beginning “Dear Friend Lee.”] It is to be remembered that Kinney swears that he thinks it was in May, or early in June of that year, that he wrote to Lee accepting his proposition. And if it was accepted at all, it is reasonable to suppose that it was done within three months from the time the offer was made.
The letter referred to in this letter of Kinney, as received ■from Lee, was undoubtedly the one containing Lee’s proposition. The language of Kinney Vletter is wholly inconsistent' with the idea that Lee’s proposition had been accepted. On the contrary, it states an objection to it in the loss of his services, equivalent .to throwing away the' whole sum invested. Yet this letter was written three months after they had probably received that proposition, and one month after the time when Kinney says it was accepted.
Hnder all the circumstances, in proof before us, we are compelled to conclude that Kinney labored under a mistake when he testified that the proposition of Lee had been accepted in writing. This fact is a vital one in the case of complainants, and having failed to. establish it, they must fail in their suit.
Decree reversed with costs, and the case remanded with directions to enter a decree
Dismissing the bill.

 Supra, top of p. 812.